UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

TEODORO TOLEDO                                                              PLAINTIFF

v.                                               CIVIL ACTION NO. 3:04CV-121-S

ALPHONSO R. JACKSON, Secretary,
U.S. Department of Housing and Urban Development                DEFENDANT

## MEMORANDUM OPINION

This matter is before the court on motion of the defendant, Alphonso R. Jackson, Secretary

of the U.S. Department of Housing and Urban Development ("HUD"), for summary judgment in this

action alleging discrimination on the basis of age and national origin in HUD's hiring practices.

The plaintiff, Teodoro Toledo, sought but was not selected for promotion to the position of

Supervisory Public Housing Revitalization Specialist (hereinafter "the position") in HUD's

Louisville District.  Toledo is a Hispanic native of the Phillippines.  He was fifty-six years old when

he applied for the position.

Stephen Schneller, a 40-year-old Caucasian American male, was awarded the position

identified as "Supervisory Public Housing Revitalization Specialist, 1101, Grade 13" on the

Certificate of Eligibles.  Plaintiff's Exhibit A ("Ex. A"), ex. 28, pg. 1.  There is a second Certificate

of Eligibles for the position of "Supervisory Public Housing Revitalization Specialist, 1101, Grade

14" which does not contain Schneller's name.  Ex. A, ex. 28, pg. 3.

The position for which Toledo applied was advertised in a vacancy announcement published

on August 7, 2002.  The position was described in the announcement as a GS-1101-13/14 position

with a salary range of $64,542.00-$99,150.00 per year.  The announcement contained the following

specific information:

MAJOR DUTIES:

The incumbent is responsible for supporting the Office Director in the implementation of all Public Housing programs including the Section 8 Housing Choice Voucher and Moderate Rehabilitation Programs; Capital Fund Programs (HOPE 6, development and modernization), Management Assessment Programs (for instance PHAS and SEMAP); Operating Fund program and resident self-sufficiency and economic independence programs.

QUALIFICATIONS REQUIRED:

Applicant must have one year of specialized experience equivalent to the next lower grade in the Federal service, which has equipped the applicant with the particular knowledge, skills, and abilities to successfully perform the duties of the position. Experience is typically in or related to the work of the position as described in the Major Duties above.

Specialized experience includes performing management practices and procedures; organizational operations and practices of corporate or other organizations and experience in Human Resources Management.

KNOWLEDGES [sic], SKILLS, AND ABILITIES REQUIRED

Quality Ranking Factors: Applicant MUST provide separate narrative statements describing how their experience satisfies each Quality Ranking Factor (QRF)/Knowledge, Skill and Ability (KSA). Provide specific examples of your qualifications and significant accomplishments.

1. Ability to direct and manage a staff. (Critical Factor)

2. Ability to establish objectives and performance goals, monitor progress toward their achievement and set priorities based on changing requirements.

3. Ability to communicate effectively and perform representational functions both orally and in writing with HUD clients, local government officials, citizens groups and/or the public on programmatic and technical issues.

4. Knowledge and/or experience in public housing, Section 8 programs, or related community development or local housing programs.

Ex. A, ex. 12, pg. 2.

Toledo, Schneller, and a number of other applicants were found to be qualified and their names were submitted for final consideration. They were interviewed, and Schneller was ultimately selected for the position. Toledo filed an EEO complaint alleging discrimination based on his national origin and his age. Ex. A, ex. 1. In his explanation of the specific actions resulting in his

allegations (Ex. A, ex. 1, ¶ 16) he contended that the Schneller had no experience in public housing or Section 8 programs and was less qualified than Toledo.  He stated more specifically in his response to HUD's motion for summary judgment that (1) he was discriminated against in the hearing process when the decisionmakers relied upon the candidate interviews and determined that Toledo was not forceful and did not interview well, (2) that he was discriminated against by HUD's failure to reject Schneller as unqualified for the position, and (3) he was discriminated against when Schneller's academic credentials were considered insofar as academic background was not a Quality Ranking Factor to be considered for the position.  Response Brief, pgs. 4-5.

A party moving for summary judgment has the burden of showing that there are no genuine issues of fact and that the movant is entitled to summary judgment as a matter of law.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151-60, 90 S. Ct. 1598, 16 L. Ed. 2d 142 (1970); *Felix v. Young*, 536 F.2d 1126, 1134 (6th Cir. 1976).  Not every factual dispute between the parties will prevent summary judgment.  The disputed facts must be material.  They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2510 (1986).  The dispute must also be genuine.  The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party.  *Id.* at 2510.  The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial.  *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968).  The evidence must be construed in a light most favorable to the party opposing the motion.  *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425 (6th Cir. 1962).

In its motion, HUD admits that Toledo has made a *prima facie* case of discriminatory non-selection/non-promotion.  Memorandum in Support, pg. 7.  The legally significant age difference between Schneller and Toledo satisfies the requirement for a *prima facie* case of age discrimination

- 3 -

in spite of the fact that Schneller is also a member of the protected age class. *Grosjean v. First Energy Corp.*, 349 F.3d 332 (6th Cir. 2003). Further, HUD acknowledges that Toledo is a member of a recognized protected national origin class and thus has made a *prima facie* case of national origin discrimination. Memorandum in Support, pg. 8.

Upon proofs of a *prima facie* case, the burden of proceeding with evidence shifts to the defendant to articulate some legitimate, non-discriminatory reason for its decision. *Wrenn v. Gould*, 808 F.2d 493, 501 (6th Cir. 1987), *quoting, McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The ultimate burden of proving that the HUD intentionally discriminated against him remains with Toledo at all times. Once a legitimate, nondiscriminatory reason for the decision is articulated, Toledo must demonstrate by a preponderance of the evidence that the proffered reason was pretextual in order to defeat summary judgment. *See, Wrenn*, 808 F.2d at 501 and cases cited therein. "To establish that the explanation is pretextual, 'the plaintiff is required to show by a preponderance of the evidence either (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate [the defendant's action], or (3) that they were insufficient to motivate the [action].' *Manzer*, 29 F.3d at 1084..." *Whitaker v. Wallace*, 170 F.3d 541, 544 (6th Cir. 1999).

Toledo attempts to show that the proffered reason for his non-selection was a pretext because in fact Schneller was not a qualified applicant. Toledo contends that experience in public housing and Title 8 programs was a mandatory requirement for the job. The sole piece of evidence he offers in support of this contention is a HUD Job Analysis Form, Ex.A, ex. 28, pg. 49. Memorandum in Response, pg. 7. He has offered no evidence that the decisionmakers reviewed or utilized this form in formulating the vacancy announcement or in evaluating the qualifications of the candidates. Additionally, Toledo has no evidence that this form was considered and its contents disregarded in order to qualify an otherwise unqualified individual or individuals.

- 4 -

In any event, it does not appear that the particular HUD Job Analysis Form to which he cites applies to the position for which Schneller was hired.  The vacancy announcement described the position as a GS-1101-13/14 with a salary range from $64,542.00 to $99,150.00 per year.  Schneller was hired as a GS-1101-13.  Ex. A, ex. 14, pg. 4.  The Job Analysis Form to which Toledo referred was for the higher rank of GS-1101-14.  The form indicates that knowledge and experience in public and/or assisted housing programs, as more particularly described, is mandatory for the grade 14 position.  The HUD Job Analysis Form found at Ex. A, ex. 28, pg. 51, however, applies to the position of GS-1101-13 for which Schneller was hired.  By contrast, this form does not state that knowledge and experience in public and/or assisted housing programs is mandatory.  The HUD handbook on merit staffing describes the development of job analyses and the compilation of HUD Job Analysis Forms.  In pertinent part, it states that

> Those KSAs [knowledge, skills and abilities] which are mandatory for successful job performance are marked with an "M" on the HUD Job Analysis Form.  These are selective placement factors (SPFs) and consist of those KSAs which must be brought to the position, i.e., cannot be learned on the job in a timely manner...The KSAs which are not mandatory for successful job performance but are desirable characteristics and contribute to outstanding job performance are called quality ranking factors (QRFs). These KSAs are used to distinguish various levels of quality among candidates who demonstrate possession of all of the mandatory KSAs (selective placement factors).  Any factor on the HUD Job Analysis Form which is not designated as mandatory (ie. is not marked with an "M") is a quality ranking factor.

Ex. A, ex. 28, pg. 29.  By the very documents submitted by Toledo in Ex. A, it is established that there is a distinction in the qualifications required for the ranks of GS-1101-13 and GS-1101-14.  The vacancy announcement reflects that either level of experience may qualify applicants for the position.  Thus Toledo has not shown that Schneller was unqualified for the position of GS-1101-13 for which he was hired.

In light of the fact that Schneller was found to be a qualified applicant, and Toledo has come forward with no evidence to call this fact into question, Toledo's remaining two bases for his claims of discrimination must also fail.  "This court does not sit as a super-personnel department that

reexamines an entity's business decisions...The question is not whether the [employer] exercised prudent business judgment...but whether [the plaintiff] has come forward to refute the articulated, legitimate reason for the [employment decision]...The [employee's] perception of himself, however, is not relevant.  It is the perception of the decision maker which is relevant."  *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 464-65 (7th Cir. 1986).

The decisionmakers' determination that Toledo did not interview well has been characterized by Toledo as poor business judgment, but it simply cannot be shown to be "an error too obvious to be unintentional."  *Fischbach v. D.C. Department of Corrections*, 86 F.3d 1180, 1183 (D.C. Cir. 1996), *citing, Ramey v. Bowsher*, 915 F.2d 731 (D.C. Cir. 1990).  "Employers have the discretion to choose among qualified candidates, 'provided that the decision is not based upon unlawful criteria.' "*Ramey*, 915 F.2d at 735, *quoting, Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 259, 101 S.Ct. 1089, 1097, 67 L.Ed.2d 207 (1981).  Toledo has offered no evidence to suggest a discriminatory animus in the decisionmakers' selection of Schneller from the pool of qualified candidates.  "An employer has even greater flexibility in choosing a management-level employee...because of the nature of such a position."  *Wrenn*, 808 F.2d at 502, *citing, Ackerman v. Diamond Shamrock Corp.,* 670 F.2d 66, 70 (6th Cir. 1982), *et al.*

The court concludes that no genuine issue of material fact exists and HUD is entitled to judgment as a matter of law.  A separate order will be entered this date in accordance with this opinion.